UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANN M. THOMAS,

Plaintiff,

v.

COOPERVISION INC.,

Defendant.

---

**DECISION AND ORDER**

6:25-CV-06441 EAW

## INTRODUCTION

*Pro se* plaintiff Ann M. Thomas ("Plaintiff") filed this employment discrimination action against defendant CooperVision[1] Inc. ("CooperVision" or "Defendant"), alleging causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA") (Dkt. 1). Presently before the Court is Defendant's motion to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(6), or in the alternative for summary judgment pursuant to Rule 56. (Dkt. 5). For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

### I. Factual Background

The following facts are taken from Plaintiff's complaint, including the attached exhibits. (Dkt. 1). As is required at this stage of the proceedings, the Court has treated Plaintiff's allegations as true.

---

[1] The Court's spelling of Defendant's name complies with Defendant's filings.

Plaintiff began her employment with CooperVision on October 9, 2006. (Dkt. 1 at ¶ 4). The alleged discriminatory conduct began in November 2023 when her supervisor Jonathon Baumbarger ("Baumbarger") conspired with Sarita Chhetri ("Chhetri"), another employee, to subject Plaintiff to disciplinary action, resulting in Plaintiff being "written up" by Baumbarger. (*Id.* at ¶ 19). Plaintiff reached out to the human resources ("HR") department and an HR employee was assigned to assist Plaintiff. (*Id.*). No resolution occurred. (*Id.*).

Plaintiff was written up again in November 2024 based on "mostly false accusation[s]" from Baumbarger and Chhetri. (*Id.*). Plaintiff consulted with the same HR employee on the matter, who told her that he would speak to CooperVision lawyers. (*Id.*). Ultimately, an investigation was launched. (*Id.*). Baumbarger intimidated and retaliated against Plaintiff by denying her a year-end raise. (*Id.*).

## II. <u>Procedural Background</u>

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 27, 2025.[2] The EEOC issued a determination and right-to-sue letter on May 1, 2025. (Dkt. 1 at 7-10).

---

[2] Although Plaintiff's complaint alleges that she filed a charge with the EEOC in October 2024 (Dkt. 1 at ¶ 10), a copy of the charge provided in Defendant's motion papers reflects a date of April 27, 2025 (Dkt. 5-1 at 6). The Court may consider the administrative charge because "on a motion to dismiss, the Court may consider a document with terms and effects that the complaint relies heavily on, and which make the document integral to the complaint." *Scott v. Rochester Gas & Elec.*, 333 F. Supp. 3d 273, 275 n.1 (W.D.N.Y. 2018) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Although Plaintiff did not attach a copy of the EEOC charge to her complaint, Plaintiff specifically references and relies on it in her complaint. (*See* Dkt. 1 at ¶¶ 10, 16). The document is integral to the complaint, and the Court may consider it in connection with the motion to

Plaintiff filed a complaint on August 25, 2025, alleging discrimination, hostile work environment, and retaliation under Title VII and the ADEA. (Dkt. 1 at ¶ 13). Defendant filed the instant motion on January 7, 2026, seeking to dismiss the complaint pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(6) or, in the alternative, seeking summary judgment pursuant to Rule 56. (Dkt. 5). On January 14, 2026, Defendant submitted a statement of undisputed material facts as a supplemental filing. (Dkt. 9). Plaintiff responded (Dkt. 12), and while her filing responded to Defendant's statement of undisputed material facts, Plaintiff did not meaningfully respond to several of Defendant's arguments. Defendant filed reply papers (Dkt. 13).

## DISCUSSION

### I. Legal Standards

#### A. Motion to Dismiss

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

dismiss. *See Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 407 (W.D.N.Y. 2022) (considering the plaintiff's EEOC charge to evaluate Title VII claims on a motion to dismiss even though the charge was not attached to the complaint).

the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted). While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally.").

Similarly, a court should generally grant a *pro se* plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation

omitted). Nonetheless, leave to amend pleadings is properly denied where amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.").

"If, on a motion to dismiss under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "[A] district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings, but the rule requires that the court give 'sufficient notice to an opposing party and an opportunity for that party to respond.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009). Whether the Court should convert or decide the motion to dismiss on the pleadings alone is a matter of discretion. *See Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (explaining that a district court may choose between conversion and exclusion of extra-pleading materials presented in response to a 12(b)(6) motion).

**B. Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in

the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. <u>Timeliness of Service</u>

Defendant's first basis for dismissal is that Plaintiff did not timely serve Defendant. (Dkt. 5-2 at 9). Defendant contends that since the complaint was filed on August 25, 2025, and service occurred on December 19, 2025, Plaintiff failed to comply with the 90-day service deadline set forth in Federal Rule of Civil Procedure 4(m). (*Id.*). Plaintiff does not dispute that Defendant was not served until December 19, 2025. (Dkt. 12 at 1).

Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). While "[a] court can grant an extension [of time to serve]: (1) upon a showing of good cause; or (2) within its discretion," *Brunson-Bedi v. New York*, No. 15 Civ. 9790 (NSR), 2018 WL 2084171, at *6 (S.D.N.Y. May 1, 2018), Plaintiff did not request such relief. But "[a] court may also, 'in its discretion, extend a service deadline *nunc pro tunc*.'" *Hernandez v. Lira of N.Y. Inc.*, No. 20-CV-4457 (RA), 2023 WL 2647639, at *3 (S.D.N.Y. Mar. 27, 2023) (quoting *Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18 Civ. 5448 (ER), 2021 WL 185040, at *5 (S.D.N.Y. Jan. 19, 2021)).

Rather than dismiss Plaintiff's complaint for insufficient service of process, as Defendant urges, the Court will permit a discretionary extension. "In determining whether a discretionary extension is appropriate in the absence of good cause, courts in this Circuit generally consider four factors: (1) whether any applicable statutes of limitations would

bar the action once re-filed; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013) (quotation modified and citation omitted); *see also Buon v. Spindler*, 65 F.4th 64, 75 (2d Cir. 2023) ("Additionally, it is well settled that district courts have discretion to grant extensions under Rule 4(m) even in the absence of good cause." (quoting *Zapata v. City of N.Y.*, 502 F.3d 192, 196 (2d Cir. 2007) (quotation modified))). Based on a consideration of these factors, Plaintiff's *pro se* status, the less than a month delay in service past the 90-day deadline, and the lack of any claimed or apparent prejudice to Defendant who has clear notice of Plaintiff's allegations, the Court will extend Plaintiff's time to serve the summons and her complaint on Defendant until December 19, 2025. Accordingly, the Court denies Defendant's motion to dismiss on the basis of untimely service, grants Plaintiff an extension of time for service until the date that service was completed on Defendant, and declares Plaintiff's late service on Defendant effective *nunc pro tunc*.

## III. Timeliness of Complaint

Defendant contends that Plaintiff's complaint is time-barred because Plaintiff did not file it within 90 days of receiving the right-to-sue letter from the EEOC. (Dkt. 5-2 at 10-12). Plaintiff agrees with Defendant that she filed her complaint on August 25, 2025, but claims she did not receive notice until May 27, 2025, making her complaint timely. (Dkt. 12 at 1-3).

Individuals may bring Title VII claims in federal court only after filing a timely charge with the EEOC and receiving an EEOC right-to-sue letter. 42 U.S.C. § 2000e-5(e), (f); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). Administrative exhaustion is an essential element of Title VII's statutory scheme whose purpose is to avoid unnecessary judicial action by the federal courts by "giv[ing] the administrative agency the opportunity to investigate, mediate, and take remedial action." *Stewart v. U.S. Immigr. & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985). The Second Circuit has held that exhaustion "is a precondition to bringing a Title VII claim in federal court rather than a jurisdictional requirement." *Francis v. City of N.Y.*, 235 F.3d 763, 768 (2d Cir. 2000) (citations omitted).

"In order to be timely, a claim under Title VII or the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter." *Edo v. Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021) (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996)). "The 90-day limit . . . is not merely a suggestion; it is a statutorily-imposed requirement necessitating strict adherence, subject only to very narrow exceptions." *Celestine v. Cold Crest Care Ctr.*, 495 F. Supp. 2d 428, 432 (S.D.N.Y. 2007); *see Blank v. Beam Mack Sales & Serv., Inc.*, No. 6:20-cv-06092 EAW, 2021 WL 826738, at *1 (W.D.N.Y. Mar. 4, 2021) ("The 90-day limit is strictly construed."); *Hughes v. Elmira Coll.*, 584 F. Supp. 2d 588, 590 (W.D.N.Y. 2008) (dismissing plaintiff's claims as untimely where plaintiff filed complaint 91 days after right-to-sue letter received). "Although *pro se* plaintiffs are entitled to leniency in other areas of litigation, the case law is clear: The 90-day deadline is strictly enforced against represented and *pro se* plaintiffs alike."

*Williams-Lawson v. Subway Surface Supervisors Ass'n*, No. 20 Civ. 8544 (PGG) (SLC), 2021 WL 4943554, at *6 (S.D.N.Y. June 21, 2021), *report and recommendation adopted*, 2021 WL 4264067 (S.D.N.Y. Sept. 20, 2021) (quoting *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17 Civ. 1022 (PAE) (AJP), 2017 WL 5125542, at *3 (S.D.N.Y. Nov. 1, 2017)).

The 90-day period begins to run when a party or their representative has receipt of the right-to-sue letter or actual notice of the EEOC's decision. *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) ("[T]he 90-day limitations period set forth in 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that a right-to-sue letter is first received either by the claimant or by counsel, whichever is earlier."); *see also Fabor v. Niagara Frontier Transp. Auth.*, No. 23-CV-831 (JLS) (MJR), 2025 WL 542569, at *2 (W.D.N.Y. Feb. 18, 2025) ("Even where a claimant 'did not receive a right-to-sue letter,' the 'ninety-day statute of limitations begins to run when a claimant or his attorney receives actual notice of the dismissal of the EEOC complaint.'" (quoting *Hilton v. Bedford Paving, LLC*, No. 08-CV-6552 CJS, 2011 WL 3957269, at *9 (W.D.N.Y. Sept. 7, 2011)).

In addition, "[t]here is a presumption that a notice provided by a government agency was mailed on the date shown on the notice. . . . There is a further presumption that a mailed document is received three days after its mailing." *Tiberio*, 664 F.3d at 37. Those presumptions can be overcome by "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail." *Id.* (citation omitted); *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 433 (S.D.N.Y. 2019) ("The

three-day presumption may be rebutted, however, by admissible evidence, such as an affidavit by the claimant stating the actual date of receipt.").

Here, the right-to-sue letter attached to Plaintiff's complaint is dated May 1, 2025. (Dkt. 1 at 7). Notwithstanding that date, Plaintiff pleaded that she received the letter on May 27, 2025. (Dkt. 1 at ¶¶ 12, 18). In addition, in a sworn affirmation filed in response to Defendant's motion, Plaintiff contends that on "May 1, 2025, [she] received an email stating that a decision had been made and directing [her] to log into the EEOC portal. The May 1 email did not contain the Notice of Right to Sue. [She] accessed the EEOC portal on May 27, 2025[,]" and "[t]he Notice of right to Sue was first receive by [her] on May 27, 2025." (Dkt. 12 at 3). In consideration of the date of receipt alleged in the complaint and the sworn affirmation, it is plausible that Plaintiff did not receive notice of the right-to-sue letter until May 27, 2025, which if proven would render her complaint filed within 90 days of that date timely.

In its reply papers, Defendant urges the Court to find Plaintiff's complaint untimely even if it is true that she did not read the right-to-sue letter until May 27, 2025. (Dkt. 13 at 3). In that vein, Defendant asks the Court to find that as a matter of law, a plaintiff who receives an email from the EEOC "expressly advising that a new document . . . had been added to the EEOC portal" receives notice of a right-to-sue letter on the day that email is sent, such that the 90-day period to commence a lawsuit starts to run that same day. (*Id.*). The Court declines to reach this finding on the record before it.

The Court's decision is informed by the email that Plaintiff attached as an exhibit to her affirmation (*see* Dkt. 12 at 4-5), which clearly reflects that it was sent from the EEOC

to Plaintiff on May 1, 2025—but that the email was sent on that date does nothing to inform as to when Plaintiff actually opened and read the email. The right-to-sue letter informed Plaintiff that "[r]eceipt generally means the date when you (or your representative) opened this email or mail." (Dkt. 1 at 9; *see also id*. at 7 ("Receipt generally occurs on the date that you (or your representative) view this [Determination and Notice of Rights].")). Moreover, the language of the email itself did not indicate that it provided notice of the right-to-sue letter. The subject line stated "Document Added to EEOC Charge 525-2025-00065" and the body similarly said, "A new document was added to EEOC Charge No. 525-2025, Miss Ann M. Thomas v. COOPERVISION Inc." (Dkt. 12 at 4). In other words, nothing about the subject line or body of the email suggested that it was informing about a right-to-sue letter. In addition, the email directed Plaintiff to sign in to the EEOC portal to view the document—yet nowhere in the email was Plaintiff informed that a decision was made in her case, nor was it conveyed to Plaintiff that she needed to view the notice with urgency.

That said, Defendant asks to circumvent that precise language from the EEOC and hold that an email is deemed received as soon as it lands in a plaintiff's inbox, and that a non-specific email directing the recipient to log into a portal to view a document constitutes receipt of a right-to-sue letter sufficient to trigger the running of the 90-day clock for commencement of federal litigation. The Court recognizes that Defendant has cited in its reply memorandum out-of-circuit cases supporting its position. (*See* Dkt. 13 at 3). For instance, in *McDonald v. St. Louis Univ.*, 109 F.4th 1068 (8th Cir. 2024), the Eighth Circuit determined that the 90-day period began when "the EEOC sent an email to [plaintiff's]

lawyer saying that 'a new document was added to' her case file with a link to sign in to the EEOC Public Portal." *Id.* at 1070-71. Moreover, while not cited by Defendant, the Court recognizes that other Circuit Courts of Appeals have reached similar conclusions. *Pinnock v. Teletech Gov't Sols., LLC*, No. 25-1285, 2026 WL 1970544, at *3 (10th Cir. July 8, 2026) (collecting cases and noting agreement among Seventh, Eighth and Tenth Circuit Courts of Appeal). And many out-of-circuit district courts have found that notice occurs when the email is sent, no matter when the recipient opens and reviews the email. *Allen v. Henry Ford Health Sys.*, No. 2:25-CV-11584-TGB-CI, 2026 WL 2566211, at *6 (E.D. Mich. Aug. 31, 2026) (collecting cases).

But Defendant does not acknowledge that other Circuit Courts of Appeals have reached opposite conclusions. For example in *García-Gesualdo v. Honeywell Aerospace of Puerto Rico, Inc.*, 135 F.4th 10 (1st Cir. 2025), the First Circuit concluded that an email "indicating that a new document was available" and a separate email "indicating that an important document regarding a decision from the EEOC was available" both failed to fairly apprise Plaintiff of her right to file suit within 90 days. *Id.* at 17. The First Circuit explained its rationale as follows:

> That is so because the notice that triggers the ninety-day period under Title VII or the ADA is not notice of any EEOC action—it is notice that the EEOC has either "dismissed the charge or . . . failed to address the employee's grievance (by reaching a negotiated settlement or by commencing litigation on her behalf)." And, "[a]s a general rule, only a written notice by the EEOC that indicates <u>without ambiguity</u> that its processes have been terminated will suffice to commence the running of the ninety-day period." In sum, in order for an email that does not attach the right-to-sue letter itself to provide notice, it must "indicate[ ] without ambiguity" that the EEOC has reached a final decision and that the claimant has ninety days to bring suit if they so wish.

*Id.* at 18 (internal citations omitted). The Ninth Circuit held similarly in *Asuncion v. Hegseth*, 150 F.4th 1252, 1259 (9th Cir. 2025).

The Second Circuit Court of Appeals has not reached the issue. And Defendant raised this issue—that receipt of an email constituted notice even if the email or corresponding document was never viewed until a later date—in its reply memorandum. Under the circumstances, the Court finds it would be inappropriate to resolve this issue on this motion at this stage of the proceedings. *See Desius v. BWW Res. LLC*, No. 23-CV-6053DGL, 2023 WL 3746336, at *3-4 (W.D.N.Y. June 1, 2023) (denying motion to dismiss where the record contained conflicting proof as to when right-to-sue letter was received, stating "[w]hether the issues presented by the motion can be resolved after discovery and further development of the record, on a motion for summary judgment, remains to be seen, but at this point the motion is premature"); *see also Lia-Basile v. Cnty. of Albany*, No. 1:25-CV-0291 (GTS/MJK), 2025 WL 3019150, at *8 (N.D.N.Y. Oct. 29, 2025) (denying motion to dismiss for lack of timeliness because "the fact that Plaintiff was *sent* this email on December 2, 2024, is not proof that she *viewed or opened* that email on that date, and it is the date of viewing or opening that appears to control the definition of 'receipt' under the EEOC's policies" (emphasis in original)).

Thus, Defendant's motion to dismiss based on failure to commence the lawsuit within 90 days of receipt of the right-to-sue letter, is denied. The issue may be raised at a later stage on summary judgment after a more robust factual record is developed through discovery.

## IV. Failure to Exhaust ADEA Claims

Defendant contends that Plaintiff's claims under the ADEA must be dismissed for failure to exhaust administrative remedies because the EEOC charge identifies race as the sole basis for the discrimination claim and does not include any factual allegations that could reasonably be construed as asserting an ADEA violation. (Dkt. 5-2 at 12-13). Plaintiff does not respond to this contention but admits that her EEOC charge "identifies race as the sole basis for her discrimination claim, and the charge contains no reference to age discrimination." (Dkt. 12 at 1; *see* Dkt. 9 at ¶ 2).

"A plaintiff typically may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 352 (E.D.N.Y. 2013) (quoting *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 83 (2d Cir. 2001)). As explained by the Second Circuit in *Ximines v. George Wingate High Sch.,* 516 F.3d 156 (2d Cir. 2008):

> This Circuit has recognized that a claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. In this inquiry, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving. The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases. The reasonably related exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering.

*Id.* at 158 (citation modified).

In her EEOC charge, Plaintiff maintains that she was discriminated against based on her race—specifically, because she is "a Black woman." (Dkt. 5-1 at 4-5). The allegations within Plaintiff's administrative charge pertain only to that category and explicitly claim a "violation of Title VII of the Civil Rights Act of 1964" on the basis of race, with no mention of the ADEA. (*See id.* at 5). Plaintiff's administrative charge is devoid of any allegations relating to or that could be construed as age discrimination or retaliation, and there are no facts from which the Court could reasonably conclude that the EEOC would have been put on notice to investigate any claims relating to age discrimination. Because the Court concludes that Plaintiff failed to exhaust administrative remedies with respect to a claim of age discrimination, any claim made under the ADEA is dismissed without leave to amend.

## V. <u>Title VII Claims</u>

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff pleads causes of action for discrimination, hostile work environment, and retaliation under Title VII, and Defendant seeks dismissal of all claims.

### A. Discrimination

Defendant moves for dismissal of Plaintiff's discrimination claim on the grounds that Plaintiff has failed to sufficiently allege that she was subject to an adverse employment action based on her race. (Dkt. 5-2 at 13-17).

Discrimination claims are assessed using the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case, a plaintiff must demonstrate: "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). If a plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse act." *Id.* at 498-99 (citation modified). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citation omitted). In other words, the plaintiff must "demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Leibowitz*, 584 F.3d at 499 (citation modified).

At the motion to dismiss stage, a plaintiff does not have to plead a prima facie case under *McDonnell Douglas*. Rather, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)).

Defendant contends that Plaintiff has failed to allege an adverse employment action or plead a minimal inference of discrimination. (Dkt. 5-2 at 14-17).

### i. Adverse Employment Action

For purposes of a claim for discrimination under Title VII, "a plaintiff may suffer an 'adverse employment action' if she endures a 'materially adverse change in the terms and conditions of employment.'" *Richardson v. N.Y.S. Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999) (citations omitted), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). To qualify as materially adverse, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation omitted). "'Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Sethi v. Narod*, 12 F. Supp. 3d 505, 523 (E.D.N.Y. 2014) (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)). There are no "bright-line rules" as to what constitutes an adverse employment action, and Title VII "does not define adverse employment action solely in terms of job termination or reduced wages and benefits. . . ." *Richardson*, 180 F.3d at 446 (internal quotations and citations omitted). As a result, "courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997).

Defendant submits that Plaintiff's allegations of written warnings from her supervisor are insufficient to constitute employment actions. (Dkt. 5-2 at 14-16). In support of its argument, Defendant cites the undersigned's decision in *Gissendanner v.*

*Gen. Motors Corp.*, No. 6:20-CV-06109 EAW, 2022 WL 17252372 (W.D.N.Y. Nov. 28, 2022), which includes the following language:

> Verbal and written warnings generally do not constitute adverse employment actions unless they lead to more substantial employment actions that are adverse. [C]ourts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation [and] . . . criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action.

*Id.* at *7 (quoting *Santiago v. Sodexo, Inc.*, No. 3:21-CV-534(AWT), 2022 WL 267529, at *3 (D. Conn. Jan. 26, 2022)). According to Defendant, because "there is no claim that [Plaintiff] was demoted, terminated, or otherwise penalized" as a result of the written warnings, she has failed to plead an adverse employment action.

Defendant's contention is belied by the allegations of the complaint in which Plaintiff alleges that in addition to the written warnings, she was denied an end-of-year raise. (Dkt. 1 at ¶ 19). Inasmuch as "courts in this Circuit have repeatedly found that "[d]enial of a raise or merit bonus where one is warranted constitutes an adverse job action," *Boutin v. Comcast Cable Comm's Mgmt., LLC*, No. 3:21-CV-1630 (SVN), 2023 WL 4564375, at *6 (D. Conn. July 17, 2023) (citing *Ebanks v. Neiman Marcus Grp., Inc.*, 414 F. Supp. 2d 320, 331 (S.D.N.Y. 2006); *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 349 (S.D.N.Y. 2010) ("Under the law of the Second Circuit, the denial of a salary increase is . . . sufficiently material to constitute an adverse employment action."); *Lin v. UT Freight Serv. (USA) Ltd.*, No. 18-CV-07042 (DLI) (RLM), 2022 WL 767863, at *5 (E.D.N.Y. Mar. 14, 2022) (recognizing that there is "little question that

denial of a raise qualifies as an adverse employment action" in an age discrimination case)), the Court finds that Plaintiff has plausibly alleged that she was subject to an adverse employment action.

**ii. Minimal Inference of Discrimination**

"No one particular type of proof is required to show that Plaintiff's [adverse employment action] occurred under circumstances giving rise to an inference of discrimination." *Moore v. Kingsbrook Jewish Med. Ctr.,* No. 11-CV-3625 (MKB), 2013 WL 3968748, at *6 (E.D.N.Y. July 30, 2013) (internal quotations and citation omitted). At the motion to dismiss stage, an allegation "of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003) (citation modified). Further, "[a]llegations of discriminatory comments directed at the plaintiff's racial group are a recognized method of establishing discriminatory intent." *Henry v. N.Y.C. Health & Hosp. Corp.,* 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014); *see also Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir. 2001) (inference of discrimination may be raised by "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]"); *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir. 1996) ("The circumstances that give rise to an inference of discriminatory motive include actions

or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus.”). Conversely, “a plaintiff's mere subjective belief that he was discriminated against does not sustain a discrimination claim.” *Sethi,* 12 F. Supp. 3d at 536 (citation modified).

Here, Defendant maintains that Plaintiff's claim of discrimination is speculative because “[t]here is no identification of discriminatory statements, conduct, or circumstances that would support an inference of bias or animus based on race. . . .” (Dkt. 5-2 at 16). The Court agrees that Plaintiff has failed to plausibly plead a minimal inference of discriminatory motivation. In other words, Plaintiff has not provided any allegations that are racially discriminatory on their face, nor has she provided any allegations that would raise the logical inference that she was being discriminated against— i.e., allegations that other similarly situated employees were treated better than her. While the EEOC charge contains an allegation that another employee was not disciplined for the same conduct as Plaintiff (*see* Dkt. 5-1 at 4-5 (“Meanwhile, another employee who was using their phone, (Harley), was not disciplined”)), Plaintiff fails to allege any information regarding the employee's race to establish an inference of differential treatment based on a racial classification. *See Henry,* 18 F. Supp. 3d at 408 (dismissing plaintiff's claim for racial discrimination because the complaint “lack[ed] any factual basis from which one could infer that any Caucasian employee similarly situated to Henry was subject to differential treatment”). Moreover, although the EEOC charge includes the allegation that Baumbarger “favor[s] hiring women from Nepal,” Plaintiff appears to allege that she

herself is a Nepalese woman, suggesting that Plaintiff has experienced more favorable treatment because of her race rather than establishing discrimination. (Dkt. 5-1 at 4).

Based on the allegations of the complaint and the EEOC charge, and affording Plaintiff every reasonable inference, Plaintiff has not "nudged [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 547, necessitating dismissal of this claim. Nevertheless, because of Plaintiff's *pro se* status and because an amendment of the complaint with more fulsome details regarding the alleged discrimination could yield different results, the Court dismisses this claim with leave to amend.

**B. Hostile Work Environment**

Defendant seeks dismissal of this claim because Plaintiff has not pleaded facts suggesting that she was subjected to ongoing, targeted, or discriminatory harassment. (Dkt. 5-2 at 17-19).

A hostile work environment that is actionable denotes a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. . . .'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). A plaintiff pursuing a hostile work environment claim "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race]." *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (citation modified). Whether an environment is "abusive" or

"hostile" is evaluated based on all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether the conduct is physically threatening or humiliating, or "a mere offensive utterance"; and (4) whether it "unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. When evaluating a hostile work environment claim, the Court must not "view individual incidents in isolation," or "view the record in piecemeal fashion," but should consider "the totality of the circumstances, viewed from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances including the social context in which particular behavior occurs and is experienced by its target." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (citations modified).

To withstand a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse. . . .'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Plaintiff's allegations fail to plausibly allege a hostile work environment claim. While actions that are racially neutral on their face can be considered in assessing the totality of the circumstances for a hostile work environment claim, there must be "some circumstantial or other basis for inferring that such incidents were in fact discriminatory." *Lioi v. N.Y.C. Dep't of Health & Mental Hygiene,* 914 F. Supp. 2d 567, 591 (S.D.N.Y. 2012) (citation modified) (quoting *Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir. 2002)). Just as Plaintiff failed to establish an inference of discrimination on her general

discrimination claim, her complaint fails to articulate how the actions against her were motivated by racial animus. *See Raum v. Laidlaw Ltd.*, No. 98-9091, 1999 WL 248157, at *2 (2d Cir. Apr. 23, 1999) ("[W]hile [the] alleged remarks may have been crass and offensive, they were not predicated on [plaintiff's protected classification] and therefore were not actionable under Title VII."); *Parekh v. Swissport Cargo Serv., Inc.,* No. CV-08-1994 (CPS), 2009 WL 290465, at *5 (E.D.N.Y. Feb. 5, 2009) (complaints concerning unfair disciplinary actions and workplace assignments did not contain suggestion that they were engaged in because of plaintiff's race).

Thus, the Court agrees with Defendant that this claim must be dismissed because there is no factual support linking the alleged conduct to Plaintiff's race. (Dkt. 5-2 at 18). But because the Court cannot conclusively state that amendment of this claim would be futile, the Court grants leave to amend.

### C. Retaliation

Title VII contains an anti-retaliation provision that "makes it unlawful for an employer to discriminate against any employee because that employee opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII investigation or proceeding." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citation modified) (quoting 42 U.S.C. § 2000e-2(a)). To state a claim for retaliation under Title VII, a plaintiff must allege

> "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316; *see Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). An employment action

> is adverse in the retaliation context if a plaintiff "show[s] that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).

*Curry-Malcolm v. Rochester City Sch. Dist.*, Nos. 21-2683, 21-2700, 2023 WL 3698213, at *2 (2d Cir. May 30, 2023). Defendant contests all but the third element, recognizing that "the definition of an adverse employment action in the retaliation context is broader than in discrimination claims" and "encompass[es] conduct that could reasonably dissuade a reasonable worker from making or supporting a charge of discrimination." (Dkt. 5-2 at 19-20).

First, Defendant proffers that Plaintiff has not plausibly established that she engaged in protected activity because there is no indication in the complaint that she communicated to the HR department that she was being discriminated against because of her race. (Dkt. 5-2 at 20). An employee "engages in a protected activity when he protests or opposes an employment practice that he reasonably believes, in good faith, violates the law." *Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597(DLC), 2010 WL 4513298, at *17 (S.D.N.Y. Nov. 10, 2010) (citing *Kessler*, 461 F.3d at 210). "An employee opposes discrimination by, for example, raising informal complaints of discriminatory employment practices to management." *Boutin*, 2023 WL 4564375, at *23 (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Despite Defendant's position, the Court is satisfied that Plaintiff has met her burden by alleging that she met with an HR employee after she was disciplined by Baumbarger in November 2024 and that as a result, "an investigation was

launch[ed]." (Dkt. 1 at ¶ 19). Particularly given Plaintiff's *pro se* status and the liberal construction that must be afforded review of the complaint, those allegations create a reasonable inference that she made a claim of racial discrimination in her meeting with the HR employee, causing the commencement of an internal investigation—which is adequate at this stage of the proceeding.

For similar reasons, Defendant's contention that Plaintiff has failed to allege any facts demonstrating that Baumberger knew about the protected activity lacks merit. (Dkt. 5-2 at 20-21). Plaintiff alleges that an investigation was launched after her report, which would have conceivably apprised Baumberger that Plaintiff had made a complaint about the instances of discipline.

On the last element, Defendant asks the Court to find that there are no facts that support a causal connection between the alleged protected activity and the denial of a raise, particularly because, according to Defendant, "the Complaint does not specify when the raise was denied relative to the protected activity." (*Id.* at 21). The Court disagrees. Although Plaintiff does not provide the exact date that she was denied a raise, she characterizes the salary increase as a "year end raise"—i.e., a raise that is given at the end of the year. (Dkt. 1 at ¶ 19). Considering that Plaintiff claims that she made a complaint to HR in November 2024 (*id.*), Plaintiff has plausibly alleged that she was denied her year-end raise only a month or two after making the report. Because "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action[,]" *Vega,* 801 F.3d at 90 (citing *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be

established indirectly by showing that the protected activity was closely followed in time by the adverse action." (internal quotation marks omitted)); *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.")), Plaintiff has pleaded facts that sufficiently permit an inference of causation.

As such, Defendant's motion to dismiss the retaliation claim is denied.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion (Dkt. 5) to the extent it seeks dismissal of Plaintiff's claims for discrimination and hostile work environment under Title VII (dismissed with leave to amend), and age discrimination under the ADEA (dismissed without leave to amend). The motion is otherwise denied.

Plaintiff may file an amended complaint in accordance with this Decision and Order within thirty (30) days. Plaintiff is cautioned that any amendment must comply with this Decision and Order, and she may only attempt to plead dismissed claims where leave to amend was granted. Moreover, if Plaintiff attempts to plead dismissed claims, she must plausibly allege facts in accordance with the principles set forth herein. Plaintiff is further advised that an amended complaint is intended to completely replace the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). Therefore,

Plaintiff's amended complaint must include all of the allegations against Defendant so that the amended complaint may stand alone as the sole complaint in this action which Defendant must answer. If Plaintiff does not file an amended complaint, this action will proceed on the claim for retaliation under Title VII. All other claims will remain dismissed.

Defendant's deadline to answer or otherwise appear in this matter is held in abeyance pending further order of the Court, and will be set once it is clear whether Plaintiff intends to file an amended complaint in accordance with this Decision and Order.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 28, 2026
Rochester, New York